MULLER ENTERPRISES, INC. (EDWARD D. HEIMAN, SUBSTITUTED THEREFOR), APPELLANT, v. SAMUEL GERBER ADVERTISING AGENCY, INC., ET AL., APPELLEES.

153 N. W. 2d 920

Filed November 10, 1967.   No. 36613.

Foulks, Wall & Wintroub, for appellant.

Howard B. Westering, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is a suit for an accounting on a finder's contract and a scheme for advertising and selling insurance policies direct by mail. The trial court found that the balance due on the contract to the plaintiff is $1,559 and that nothing was due under the terms of a second contract. The plaintiff has appealed.

The evidence shows that Muller Enterprises, Inc., entered into a written contract with Samuel Gerber Advertising Agency, Inc., to find an insurance company who would pay the agency $10 for each closure obtained and $5 for each renewal, Muller to receive 10 percent of the amounts received by the Gerber agency as his commission for originating the scheme and finding an insurance company who would join in the plan. Muller produced the Service Life Insurance Company and, after negotiation, an advertising contract was en-

tered into between the insurance company and the advertising agency on the basis that the agency would receive $10 for each insurance closure and $5 for each renewal produced by the advertising program. The finder's contract was dated December 8, 1960, and commissions were paid to Muller to the extent of $1,653 for closures, but no renewals, for a period of about 14 months, when the Gerber agency refused to make furt her payments. Muller brought suit. It was determined by this court that the finder's contract dated December 8, 1960, was valid, that commissions were due on all closures but not on renewals, and that the amount due and owing to December 31, 1963, was $10,926.80, for which amount the judgment was affirmed. The evidence further shows that the Gerber agency and the insurance company entered into a new advertising contract on February 27, 1964, which the trial court found to be a bona fide and independent contract which would not be subject to the finder's contract between Muller and the Gerber agency. This finding by the trial court was held to be error as being without the issues, and was reversed. The evidence, holdings of the court, and the disposition made are set out in Muller Enterprises, Inc. v. Gerber, 178 Neb. 463, 133 N. W. 2d 913.

In 1966, a second appeal in this case came to this court. Muller Enterprises, Inc. v. Gerber, 180 Neb. 318, 142 N. W. 2d 593. It is shown by the opinion of the court in that appeal that on April 30, 1965, Muller filed an application for a further hearing to determine the amount of the Gerber agency's liability arising subsequent to December 31, 1963, all payments due prior to such date having been included in the judgment affirmed on the first appeal. Muller caused garnishment process to issue thereafter against the Service Life Insurance Company and the First National Bank of Omaha. The Gerber agency moved to quash the garnishment process. The trial court sustained the motion to quash, holding that it had no jurisdiction to adjudicate this controversy with-

out considering the second contract between the Gerber agency and the Service Life Insurance Company. This holding was reversed by this court and the cause remanded for further proceedings with leave to file additional pleadings if necessary to terminate the controversy. On the filing of the mandate in the district court on the second appeal, a hearing was held and a judgment entered, from which judgment the present appeal is taken.

It is made clear in the record that the judgment for $10,926.80, affirmed on the first appeal, covered all amounts due from the Gerber agency to Muller to December 31, 1963. The evidence shows that since that date, the Gerber agency has received payment for 1,559 closures in the amount of $15,590, resulting from the Gerber agency's advertising under the contract of December 8, 1960. The parties agree that Muller is entitled to 10 percent of this amount, to wit: $1,559, and the judgment of the trial court for that amount is accordingly correct.

On February 27, 1964, the Gerber agency and Service Life entered into a second advertising contract which was made effective retroactively to January 1, 1964, the date that commissions to Muller were calculated, reduced to judgment, and affirmed on the first appeal. It is the contention of Muller that he is entitled to a commission of 10 percent of the amounts paid under the second contract by virtue of his agreement with Gerber bearing the date of December 8, 1960. The Gerber agency asserts that the second advertising contract was separate, independent, and unrelated to the contract of December 8, 1960. It appears that the nature of these two contracts should be briefly restated.

Muller was a promoter of ideas for merchandising insurance. He formulated a scheme of advertising an insurance policy in newspapers, magazines, and periodicals in which advertising a coupon which, when filled out and mailed to Service Life accompanied by $1, would insure

the applicant for 60 days for the risks described in the advertising. Muller approached the Gerber agency with this idea, agreed to find an insurance company who would accept the scheme and pay the Gerber agency $10 for each closure and $5 for each renewal. For this service, Muller was to receive from the Gerber agency 10 percent of the closure fees received by it from the insurance company. Muller provided the name of the Service Life Insurance Company. After some negotiations, the general plan was accepted and the contract of December 8, 1960, entered into. Under this contract, the Gerber agency contracted and paid for the advertising, and received the contracted amounts for each closure and renewal. That Muller is entitled to 10 percent of each $10 closure fee resulting from the contract of December 8, 1960, is no longer in dispute, the same having been finally determined by litigation.

The second advertising contract entered into by the Gerber agency and Service Life on February 27, 1964, provides in substance that the contract was to be effective on January 1, 1964, or at such earlier date as may be permitted by a final order of court in the pending litigation between Muller Enterprises and the Gerber agency. The Gerber agency is to create advertising copy and designs and select the advertising media in which it is to appear, all under the direction of Service Life. The insurance company agrees to pay all costs of preparation, printing, and distribution, plus 15 percent as compensation for the Gerber agency.

It is the contention of the Gerber agency that the contract of December 8, 1960, was an improvident one and that an increase in the contract price was necessary to produce a profit. The evidence shows that the net taxable income of the Gerber agency was small in 1961, 1962, and 1963, and the salary withdrawn by Samuel Gerber, the president of the Gerber agency, was very modest during those years. Officers of Service Life testified that the insurance company desired a new con-

tract on a more conventional manner of handling to get the control of advertising in the insurance company. A further reason was that changes in policy coverage were contemplated as well as the necessity to increase the premiums on the direct mail policies. The testimony of these officers is that the new contract of February 27, 1964, was motivated by business purposes and the hope that each party might gain by entering into it.

It is the contention of Muller that one of the purposes of the contract of February 27, 1964, if not the primary one, was to eliminate Muller and his commission contract for 10 percent of the earnings of the Gerber agency contract with Service Life.

No date or event was designated as fixing the termination date of the contract of December 8, 1960. On this point, we said on the first appeal: "The contract is executory on Gerber's part and it seems to us that it clearly contemplates that the duration of the obligation is commensurate with Gerber's performance, which he may terminate at any time." In that opinion, we further said: "Gerber's own wishes determine this. His only obligation is to pay Muller 10 percent for as long as he himself performs the contract. If it becomes unprofitable or onerous, all he has to do is quit. He reserved exclusive control of the time element himself when he drew the contract and he cannot be heard to complain of the fact that he himself did not terminate it. To hold otherwise would be, to permit the receipt of continuous benefits under a contract without payment of the corresponding obligation." Under the contract of February 27, 1964, the Gerber agency continues to use the scheme of advertising the sale of insurance policies by mail with the insurance company found by Muller, even though the method of payment of the advertising has been changed and a different manner of determining the Gerber agency's commission is employed. The Gerber agency still reaps the benefit of Muller's scheme with the insurance company found by him. As long as this

situation exists, even though the form of the contract between the Gerber agency and Service Life be changed, the obligation of the Gerber agency to Muller to pay a 10 percent commission continues to exist. It is not contended that Muller has not fully performed his part of the contract, in fact, it was determined by the first appeal that Muller had fully performed. Muller is entitled to receive his 10 percent commission so long as Muller's scheme is used by the Gerber agency in its advertising business with Service Life. This was determined on the first appeal and was supported therein by the following authorities: Raymond v. White, 119 Mich. 438, 78 N. W. 469; Phelps v. Shawprint, Inc., 328 Mass. 352, 103 N. E. 2d 687; Silver v. Graves, 210 Mass. 26, 95 N. E. 948. In the last-cited case, the court said: "When a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule." There is no difficulty arising in this case as to the uncertainty or indefiniteness of the contract. So long as the Gerber agency uses the benefits of its contract with Muller in its advertising for Service Life, Muller is entitled to the benefits of his contract with the Gerber agency bearing date of December 8, 1960. The issue was raised, authorities cited, and finally determined by the first appeal to this court. See Muller Enterprises, Inc. v. Gerber, 178 Neb. 463, 133 N. W. 2d 913. It has become the law of the case. Gable v. Pathfinder Irr. Dist., 163 Neb. 349, 79 N. W. 2d 708.

The contention of the Gerber agency that its contract with Service Life under date of December 8, 1960, was unprofitable and that a new contract was required at a higher commission in order for it to handle the advertising business of Service Life cannot have the effect of terminating, nor authorize the termination, of the contract with Muller under date of December 8, 1960. Nor do the motivations of Service Life in desiring a more conventional contract giving it more control over the

kind and cost of advertising have the effect of terminating the contract between the Gerber agency and Muller. Until the Gerber agency's contract with Muller is terminated in the manner herein indicated, and in the manner stated in our opinion on the first appeal, the obligations to Muller in his contract are enforcible.

The evidence shows that Service Life has paid a minimum amount of $208,723 to the Gerber agency for advertising under the contract of February 27, 1964. The liability, however, is a continuing one until such time as the contract of December 8, 1960, with Muller is terminated. For these reasons, we reverse the judgment of the district court and remand the cause with directions to determine the amount due Muller on the basis of 10 percent of commissions earned by the Gerber agency, and enter judgment therefor, leaving for future determination any amounts that may become due subsequent to the entry of such directed judgment.

REVERSED AND REMANDED WITH DIRECTIONS.