TERRY W. TANK ET AL., COPERSONAL REPRESENTATIVES OF THE ESTATES OF WILLIS H. TANK AND MARVA LEA TANK, DECEASED, APPELLEES, V. STEVEN M. PETERSON, PERSONAL REPRESENTATIVE OF THE ESTATE OF DONALD E. PETERSON, DECEASED, APPELLANT.

423 N.W.2d 752

Filed May 13, 1988.   Nos. 86-306, 86-307.

William G. Line and John F. Kerrigan of Kerrigan, Line & Martin, for appellant.

E. Terry Sibbernsen and Debra R. Nickels of Welsh, Sibbernsen & Roach, for appellees.

HASTINGS, C.J., WHITE, and FAHRNBRUCH, JJ., and WOLF and McGINN, D. JJ.

PER CURIAM.

Plaintiffs, copersonal representatives of the estates of Willis H. Tank and Marva Lea Tank, brought a consolidated wrongful death action against the personal representative of the estate of Donald E. Peterson. The Tanks were passengers in an aircraft piloted by Peterson which crashed near the Columbus airport on November 25, 1979, killing all on board.

This is the third time this case has been before this court. In *Tank v. Peterson*, 214 Neb. 34, 332 N.W.2d 669 (1983) (*Tank I*), the district court granted defendants' motion for summary judgment on the ground that the plaintiffs' consolidated wrongful death actions were barred by the Uniform Probate Code nonclaim statute, Neb. Rev. Stat. § 30-2486 (Reissue 1979). This court reversed and remanded, holding that while the plaintiffs did voluntarily dismiss the county court action after the nonclaim statute had run and were thus barred from pursuing a claim against the estate, they could nevertheless proceed against the decedent's insurer to the extent of insurance coverage available. The case proceeded to trial and, after the plaintiffs had presented their case in chief, defendant Peterson's motion to strike the testimony of three expert witnesses and his motion for directed verdict were sustained. In

*Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985) (*Tank II*), this court reversed the trial court's rulings and remanded for new trial, holding that the defendant had failed to establish that the experts' opinions were based on insufficient underlying facts or data and that, as such, there was a jury question on the issue of negligence and proximate cause. Plaintiffs were successful in winning a jury verdict at the second trial, and damages were assessed in the amount of $179,300. The defendant appeals.

In *Tank II* we reported an extended version of the facts adduced at the first trial. At the second trial the plaintiffs relied on substantially the same testimony and documentary evidence. In order to avoid undue repetition, we will discuss only those facts necessary and relevant to the defendant's appeal.

The defendant argues that the trial court erred in failing to strike the testimony of the plaintiffs' experts because (1) they were not qualified; (2) their conclusions were based on insufficient underlying facts or data; and (3) their testimony was not needed to assist the jury in determining any facts in issue. The defendant also urges that the plaintiffs' evidence was insufficient as a matter of law to establish either the gross negligence of Peterson or that such gross negligence was the proximate cause of the accident. All of these issues were either directly or by necessary implication adjudicated on appeal from the first trial, in *Tank II*. All matters expressly or by necessary implication adjudicated by this court become the law of the case on remand for new trial and will not be considered again unless it is shown that the facts presented at the second trial are materially and substantially different from the facts presented at the first trial. *City of Kimball v. United Telephone Co.*, 223 Neb. 549, 391 N.W.2d 135 (1986); *Bass v. Dalton*, 218 Neb. 379, 355 N.W.2d 225 (1984). The burden of showing the material and substantial difference in the facts is on the party asserting the difference. *School Dist. of Gering v. Stannard*, 196 Neb. 367, 242 N.W.2d 889 (1976). The only difference in the facts urged by the defendant as affecting the expert testimony is that at the second trial there was evidence that Peterson's logbook was not current because it did not reflect the flight hours of a

trip to Norman, Oklahoma. This evidence may or may not have affected the weight afforded the expert testimony, but it did not substantially alter the foundation upon which the expert testimony rested. The conclusion in *Tank II* that the plaintiffs' experts' testimony was admissible will therefore not be considered again.

In *Tank II* we held that there was sufficient evidence to create a jury question on the issue of negligence and proximate cause. As we have determined that the experts' testimony was properly admitted, evidence adduced at the second trial is substantially the same as the first. The defendant's contention that the evidence was insufficient as a matter of law is therefore without merit. See *Kline v. Metcalfe Construction Co.*, 148 Neb. 357, 27 N.W.2d 383 (1947).

The defendant also contends that the trial court committed reversible error by admitting testimony as to instrument flight rules (IFR) and by admitting evidence that Peterson failed to overhaul the airplane's engines. The defendant's objection is that this testimony was not related to a material issue in the case because Peterson was not required to fly IFR and because engine failure was not the cause of the accident. While it is true that there was evidence that the weather conditions required only visual flight rules (VFR), there was also testimony that instrument flight was necessary in order to maintain a legal flight altitude between Columbus and Fremont. The testimony as to IFR was therefore relevant and admissible.

The plaintiffs' expert witness Gregory Gorak testified that the plane's engines were past due for inspection and overhaul and that such an overhaul would have cost $8,000 to $10,000 per engine. Gorak testified that when plane engines are overdue for scheduled repair the pilot has no idea when the engines might fail. The defendant moved, unsuccessfully, to strike this testimony because there was no evidence to indicate that engine failure had anything to do with the cause of the accident. Plaintiffs submit that this testimony is relevant because it indicates Peterson was aware that his plane was not properly maintained. This knowledge, plaintiffs contend, could have caused Peterson to be apprehensive about the flight, thereby increasing the likelihood that Peterson would become spatially

disoriented. Standing alone, the testimony in question in no way tends to make the likelihood of spatial disorientation more or less probable and is therefore irrelevant. See Neb. Rev. Stat. § 27-401 (Reissue 1985). All the jury knew was that the plane's engines needed service. It is doubtful that the jury could have made the connection between this fact and the pilot's spatial disorientation without some further testimony from one of the plaintiffs' expert witnesses. This error in admission of evidence was harmless, however, because the matter of engine overhaul was not submitted to the jury for consideration. *Daniels v. Bloomquist*, 258 Iowa 301, 138 N.W.2d 868 (1965).

The remaining assignments of error concern the instructions given to the jury. Instruction No. 2 contains the plaintiffs' allegations of negligence which the trial court determined to be supported by the evidence. The defendant contends that the court erred in submitting the allegation that Peterson failed to perform an adequate takeoff check before the flight, because there was no evidence that mechanical failure caused the accident. The plaintiffs' theory of relevance here is the same as for the engine overhaul testimony. This time, however, Gorak testified that stress can cause spatial disorientation and the lack of a proper preflight check could cause such stress. The plaintiffs' witness thereby supplied the missing link in the evidence necessary to make the preflight testimony relevant. The matter of Peterson's failure to perform an adequate takeoff check was therefore properly submitted.

The defendant further submits that it was error to include in instruction No. 2 the allegations that Peterson failed to have knowledge of the existing weather conditions and that he was not qualified, current, and legal to fly in those conditions. There was evidence in the record that at the time of the takeoff it had been hours since he had obtained a weather briefing and he knew the weather was rapidly deteriorating. As we have said, there was also testimony that the weather conditions required IFR proficiency, which the deceased did not have. The instruction regarding Peterson's negligence given the existing weather conditions was therefore proper.

The defendant asserts that instruction No. 10 on gross negligence was deficient because it did not contain certain

language offered by the defendant. The instruction used was adopted from NJI 7.51, which defines gross negligence within the meaning of the automobile guest statute. The only change made was that "aviation guest statute" was substituted for "automobile guest statute." Because gross negligence means the same thing in the automobile guest statute as in the aviation guest statute, the instruction was proper and comported with the rule that, whenever applicable, the Nebraska Jury Instructions are to be used. Nebraska Jury Instructions ix (1969). See, also, *Jones v. Foutch*, 203 Neb. 246, 278 N.W.2d 572 (1979).

The defendant next assails instruction No. 11 for including regulations on IFR. As we have said, there was testimony that in order to fly between Columbus and Fremont legally, instrument flight proficiency was required. This assignment is without merit.

The defendant argues that the court erred in failing to give his requested instruction on assumption of risk. Instead of the defendant's requested instruction, the court used NJI 2.02A (assumption of risk). As we have said, Nebraska Jury Instructions are to be used whenever applicable. NJI 2.02A adequately describes the defendant's burden in this case to prove assumption of risk, and no further language or explanation was necessary.

The defendant next asserts that the court should have included an instruction informing the jury that no flight plan was required to be filed for the flight. The testimony concerning the need to fly IFR together with the fact that flight plans are required for IFR flight made the necessity of a flight plan a question for the jury. It would have been improper to instruct otherwise.

Finally, the defendant asserts that the Nebraska Jury Instruction on expert testimony, NJI 1.42, which was given by the court, is contradictory. According to defendant, the offending sentence is: "You are not required to take the opinions of experts as binding upon you, but they *are* to be used to aid you in coming to a proper conclusion." (Emphasis supplied.) The defendant argues that while expert opinions *may* be used, they may also be ignored and the instruction therefore

misstates the law. The instruction simply tells the jury that it is to consider the evidence proffered, but that not all of the evidence is binding upon it. It was not error to give NJI 1.42.

There being no error, the judgment of the district court is affirmed.

AFFIRMED.

HASTINGS, C.J., dissenting.

I respectfully dissent from the majority's opinion for the reasons set forth in the dissenting opinion of Boslaugh, J., in *Tank v. Peterson*, 219 Neb. 438, 363 N.W.2d 530 (1985), and for the further reason that I cannot agree that the error in the admission of evidence regarding the engine overhaul was harmless.